CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:22-cv-00673 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| GILBERT, *et al.*, ) |     United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., is a Virginia Department of Corrections (VDOC) inmate currently incarcerated in North Carolina pursuant to an Interstate Corrections Compact. Proceeding *pro se*, plaintiff brought a lawsuit alleging violations of his constitutional rights during his incarceration at Red Onion State Prison. That suit was severed into several actions, including this one, which alleges claims of excessive force against defendants Gilbert, Clem, Oh, Castle, Osborne, and Clifton. (*See* Compl., Dkt. No. 1; Dkt. No. 1-1; Case No. 7:21-cv-222.)

All defendants except for Mr. Clifton move for summary judgment. (Dkt. No. 18.)[1] For the reasons stated below, this motion will be granted.

I.  BACKGROUND

Williams alleges that on February 27, 2021, at approximately 10:00 a.m., he was pulled out of his cell by Oh, Clifton, Castle, Osborne, and Clem and placed in a strip cell because he covered the window of his cell. (Compl. ¶ 13.) While on his knees in handcuffs and leg restraints, Officer Oh began to aggressively pull the shoes off Williams' feet. (*Id.* ¶ 14.) Williams was slammed to the floor face first, and while lying face down on the floor, he was

---

[1] Counsel for the other defendants declined to accept service on behalf of Clifton. (Dkt. No. 13.) Clifton was later served on May 11, 2023. (Dkt. No. 27.) Clifton has not appeared in this action.

punched in the face and head 9–10 times. (*Id.* ¶ 15.) Oh began violently pulling on Williams' hair. On the second tug, he ripped a patch of dreadlock from plaintiff's hair, leaving a noticeable patch in the center of his head. (*Id.* ¶ 16.) Oh put his fingers over Williams' nose in an attempt to stop him from breathing. (*Id.* ¶ 17.) Williams was placed in four-point restraints and placed in cell C-301 with no mattress, suicide smock, or suicide blanket. (*Id.* ¶ 18.)

Williams further alleges that Cpt. Gilbert violated his Eighth Amendment rights by failing to intervene or correct the above-alleged misconduct; Oh, Castle, Osborne, Clifton, and Clem violated plaintiff's Eighth Amendment rights by using excessive force against him when punching him in the head and face; Oh used excessive force when pulling plaintiff's hair; and that Gilbert, Oh, Clifton, and Castle are part of a group of officers who conspired to destroy Williams and his family by placing an unknown device or chemical agent onto Williams that allows staff, other inmates, and people in society to manipulate his thoughts, emotions, and actions. (*Id.* ¶¶ 23–26.)

**Exhaustion of Administrative Remedies**

In support of their motion for summary judgment, defendants submit the affidavit of C. Vilbrandt, Grievance Coordinator at Red Onion. (Vilbrandt Aff., Dkt. No. 19-1.) Vilbrandt oversees the daily operations of the Inmate Grievance Department at Red Onion. Defendants' sole argument in favor of summary judgment is that Williams failed to exhaust his administrative remedies under the VDOC's grievance procedure prior to filing this lawsuit.

VDOC records document that Williams was incarcerated at ROSP from October 30, 2017, until October 12, 2021, when he was transferred to Marion Correctional Treatment Center. On December 10, 2021, Williams was transferred back to ROSP where he remained incarcerated until May 16, 2022. (Vilbrandt Aff. ¶ 4.)

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints and allows corrections officials a means to evaluate potential problems and, if necessary, correct said problems in a timely manner. (Vilbrandt Aff. ¶ 5, Encl. A.) Grievable issues include the substance or administration of operating procedures, as well as actions of staff. Issues pertaining to state and federal laws, regulations, and court decisions are not grievable. Each inmate is entitled to us the grievance procedure in good faith and reprisals are not imposed upon inmates for such good faith use. (*Id.* ¶ 6.)

Regular Grievances must be submitted within thirty calendar days from the date of the incident. Before submitting a regular grievance, an inmate must demonstrate that she made a good faith effort to informally resolve the complaint. This can be accomplished by lodging a verbal complaint, and if the issue remains unresolved or the inmate is dissatisfied with the resolution, the inmate should submit a Written Complaint. Prison staff have 15 days from the date of receipt to respond to a Written Complaint. If staff fails to provide a written response within 15 days, the inmate may file a Regular Grievance. Inmates may also file a Regular Grievance if dissatisfied with the resolution of their Written Complaint. (Vilbrandt Aff. ¶ 7.)

When filing a formal grievance, the inmate must attach any required documentation of his attempt to informally resolve the issue. A Regular Grievance should contain one singular grievable issue. If a regular grievance meets the intake criteria, staff must accept the grievance and log it using the received date. If the grievance does not meet intake criteria, staff has two working days from receipt to complete the intake section on the grievance indicating the reason for rejection, and to return the grievance to the inmate. If the inmate disagrees with the intake decision, he has five days to appeal the decision to the Regional Ombudsman. The decision of the Regional Ombudsman is final. (*Id.* ¶ 8.) An inmate must exhaust all requirements of the

Offender Grievance Procedure before he can seek judicial relief. The exhaustion requirement is met only when a Regular Grievance is accepted into the grievance process and appealed through the highest eligible level of appeal without satisfactory resolution of the issue. (*Id.* ¶ 9.)

Inmates are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. Williams has utilized the grievance procedure during his confinement at ROSP and has filed Written Complaints and Regular Grievances throughout his incarceration as documented by VDOC records. (*Id.* ¶ 10.) However, Williams did not submit any Written Complaints and/or Regular Grievances that were accepted during the intake process regarding the allegations in this complaint. (*Id.* ¶ 11.)

Williams submitted a Regular Grievance dated July 24, 2021, wherein he complained that he was the victim of assaults committed by security staff at ROSP on February 27, 2021. Former Grievance Coordinator C. Meade received this grievance and date stamped it July 27, 2021. Williams attached Written Complaint, Log No. ROSP-21-INF-01142, dated June 22, 2201, to the Regular Grievance. (*Id.* ¶ 12.) Meade did not accept this Regular Grievance during the intake process because the filing period had expired. Meaded noted on the grievance form that the date of the incident was February 27, 2021. She did not assign a log number and returned it to Williams. (*Id.* ¶ 13.) Williams appealed the intake decision, and the Regional Ombudsman upheld the decision on August 30, 2021. The Regional Ombudsman decision is final. (*Id.* ¶ 14.)

## II.  ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1

(D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Exhaustion under the Prison Litigation Reform Act (PLRA)**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion serves "two main purposes." *Woodford*, 548 U.S. at 89. First, the exhaustion requirement "protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* But the court is "obligated to ensure that any defects in administrative exhaustion were not

procured from the action or inaction of prison officials." *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

As detailed herein, Williams did not exhaust his administrative remedies prior to filing this lawsuit. This is demonstrated by the evidence providing that Vilbrandt conducted a review of Williams' grievance file. The only attempt by Williams to grieve issues related to the allegations in this complaint was a Regular Grievance that was rejected at intake because it was untimely. Williams did not pursue any Regular Grievances through all applicable levels of appeal. Thus, Williams did not use "all steps that the agency holds out," and he did not use those steps "properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90.

In Williams' response to the argument that he did not properly exhaust available administrative remedies, Williams asserts that he was assaulted on several occasions in an attempt to intimidate him and influence him not to pursue any grievances. (Dkt. No. 35 at 6–7.) Plaintiff also asserts that an "unknown device" or "chemical agent was planted on my person that causes me to constantly hear recordings of people in society, prison officials, and other inmates and enables the same parties to somehow see my thoughts, emotions, and actions." (*Id.* at 7.) Williams claims that he is still suffering from the effects of this device, which has caused him to lose energy, his appetite, and his ability to plan or concentrate. (*Id.*) These unsworn assertions and fanciful allegations are insufficient to defeat summary judgment. It is "well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment,"

7

and that "unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment." *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 798–99 (D. Md. 2001) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). Because submitting "an affidavit in compliance with Rule 56(e) is not an onerous task," *id.* at 799, the court will not consider the unsworn evidence.[2]

Moreover, Williams' assertions are belied by the undisputed evidence that Williams had access to the grievance procedure and took advantage of the procedure on several occasions. Williams lacks a sufficient justification for his failure to exhaust the claims in this case prior to filing suit. Therefore, Williams' suit is barred by the PLRA, and defendants are entitled to summary judgment. *See, e.g.*, *Tracey v. Kirkland Corr. Inst.*, Civil Action No. 1:12-cv-01614-JMC, 2013 WL 3049410, at *4 (D.S.C. June 17, 2013) (finding that defendant is entitled to summary judgment on exhaustion issue where "a review of Plaintiff's grievance history reveals no grievances filed before the initiation of this litigation" and plaintiff's "vague and general allegations" that grievance forms were "not readily available" are "insufficient to overcome the undisputed evidence that he has failed to show any concrete attempts to exhaust his administrative remedies on any of his claims").

---

[2] The court recognizes that in his verified complaint, Williams asserts that an informal complaint was "stolen out of my property," that he was "denied of the grievance process," and staff "denied to give me a grievance." (Compl. ¶ 21.) These bald assertions are not enough to create an issue of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see also Jones v. Stamper*, No. 1:12cv352 (AJT/IDD), 2013 WL 6448847, at *2 n.2 (E.D. Va. Dec. 6, 2013) (explaining that a *pro se* prisoner's sworn pleading or brief with a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity").

## III.  CONCLUSION

For these reasons, the court will issue an appropriate order granting the motion for summary judgment and entering final judgment in this matter.

Entered: March 24, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge